(Judge Hale of the eighth circuit taking the place of Judge King, and Judge Price of the third circuit taking the place of Judge Parker.)

### Norwich Union Fire Ins. Society v. Frank Stang.

1. Application to Set Aside Entry of Dismissal under Sec. 5554, Rev. Stats. a Cumlative Remedy.

   Where an action prosecuted by one person in behalf of himself and others is irregularly or fraudulently dismissed, an application, under sec. 5354, Rev, Stat., to set aside the entry of dismissal, is a cumlative remedy and does not exclude or limit the right of a party to impeach the judgment or enjoin its its collection for fraud.

2. Consideration for Agreement to Prosecute an Action for Several Parties in Interest.

   Payment of insurance on property destroyed by fire, through alleged negligence of railroad company, the value of which exceeds the amounts of the insurance, where there is a question as to whether a rail, road company is liable for the whole loss, is a sufficient consideration to support an agreement, on the part of the assured, to prosecute, in his own name for himself and for the insurance companies, an action against the railroad company.

3. Trustee—Settlement by is Settlement of the Whole Suit.

   Such person stands in the relation of trustee to the insurance companies and he cannot settle his own interests and leave the interests of the insurance companies to be prosecuted by them. Whatever action he takes he takes for the benefit of all and in making a settlement he settles the whole suit.

4. Right of Action Based on Irregular or Fraudulent Dismissal.

   Therefore, a petition setting forth the bringing of such action, by such trustee, under such an agreement, and the subsequent and fraudulent dismissal, without the knowledge or consent of the insurance companies, and after the time when their rights of action against the railroad company are barred by the statute of limitations, states a good cause of action against such trustee.

Error to the Court of Common Pleas of Erie County.

Haynes, J.

The petition in error is filed for the purpose of reversing the judgment of the court of common pleas, and the grounds set forth are that the court of common pleas erred in sustaining the demurrer of the defendant in error to the petition of the plaintiff in error and that said court erred in giving judgment for said defendant in error, when by the law, of the state it ought to have been given for said plaintiff in error.

The case is one of some importance and one that does not frequently arise in our courts. Perhaps a brief statement of the case will be in order.

The case is entitled "The Norwich Union Fire Insurance Society of England, plaintiff v. Frank Stang, defendant." The plaintiff in its petition sets forth in substance that it had insured with other companies the property of Frank Stang in the city of Sandusky and county of Erie, the property consisting of certain buildings, a brewery and its appurtenances, and that the total amount of the insurance upon the property by itself and other companies amounted to $51,100. It sets up that the property was wholly destroyed by fire and that the fire was caused by the negligence of the Big Four Railroad Company, in that it had a locomotive which was imperfect and not properly furnished with a spark arrester,

and that in using that locomotive the sparks from the same caused the burning of the buildings owned by John McKelvey and others, being certain ice houses, and that the fire from the ice houses communicated to the brewery which was near by the premises of McKelvey, and that the property was destroyed. It further avers that the defendant Stang commenced an action on September 2, 1891, in the court of common pleas of Erie county against the railway company, claiming that his loss amounted to about $125,000 and alleging that his property had been destroyed by the negligence of the railway company, its agents and servants, and praying for judgment for that amount. Subsequently he amended his petition, but before that amendment was made an agreement was entered into between the plaintiff and the defendant Stang, in reference to the prosecution of the suit that had already been commenced, and thereupon the plaintiff filed his amended petition in which he set forth that he prosecuted the case on behalf of himself and the insurance companies, naming them, and stating the amounts that had been paid by each insurance company, the total being over $40,352, this being the amount of the various companies that had entered into the arrangement. The contract that was entered into by Stang and the plaintiff company was as follows :

This memorandum of agreement, made and subscribed by the undersigned the day and year hereinafter written ; Witnesseth : *That whereas,* The Norwich Union Fire Insurance Society of England did insure Frank Stang, of Sandusky, Ohio, under its Policy No.————issued at its Sandusky Agency upon the property and terms set forth in said policy for one year, commencing January 8, 1891 and continuing until January 8, 1892. And, *Whereas,* on the 15th day of July, 1891, said property so insured was damaged or destroyed by a fire, and the damage and loss upon said property, together with other property at the same time damaged or destroyed, belonging to the said Stang, amounted to the sum of $125,000.00, and the fire so damaging said property having been caused by the negligence of the C. C. C. & St. L. Railway Company, or some other party or company ; and, *Whereas,* the said Frank Stang did, on the 2nd day of September, 1891, commence an action against the railway company above named, in the court of common pleas of Erie county, Ohio, asking to recover from it the full value of his loss, namely ; $125,000.00. Now, therefore, I, Frank Stang, in consideration of the sum of twenty-two hundred and twenty-two and (22-100) dollars, to me in hand paid by said Norwich Union Fire Insurance Society, in full settlement of my claim against said company by reason of said loss, damage and policy of insurance, do hereby agree to assign, set over and transfer to the said Norwich Union Fire Insurance Society all my right, claim or interest to the extent of twenty-two hundred and twenty-two (22-100) dollars, paid me as aforesaid, in the judgment which I may recover or secure in said action against said railway company or any other party or company who may be liable or hereafter adjudged liable for the burning of said property, and I hereby authorize and empower the said Norwich Union Fire Insurance Society to collect and receipt for the same. Provided, that if the judgment so secured, is less than $51,100, that being the total amount so paid me on account of said insurance by all companies interested, then this assignment shall not inure to the benefit of said Norwich Union Fire Insurance Society to any greater extent than $\frac{2222 22}{51100}$ of the total amount of the judgment so secured. It being

9  O  C  D  37

expressly stipulated that said Norwich Union Fire Insurance Society shall be liable for and shall pay such proportion of the expense and costs of prosecuting said action to a final judgment in any court of this state or of the United States, and the collection of the judgment had in my favor, as the amount aforesaid paid me by the said Norwich Union Fire Insurance Company bears to the amount collected from said railway company, or other party or company, for the loss and damage to said property; Provided, that if the amount so recovered shall not exceed the sum of $51,100, that said insurance company shall pay such proportion of all the costs and expenses of said litigation as the sum so paid by it bears to said sum of $51,100; and, Provided further, that if said final judgment be against said Stang, and he recover nothing from said railway company, that said Norwich Union Fire Insurance Society shall then pay such proportion of the costs and expenses of said litigation as the amount so as aforesaid paid to said Stang by said Norwich Union Fire Insurance Company bears to the sum of $100,000.00.

Provided further, that said Norwich Union Fire Insurance Society, for itself and for such other insurance companies as may elect to join it, shall have the right and privilege of employing an attorney to assist said Stang and his attorneys in prosecuting said action, the expense so incurred to be deemed a part of the general expense for the apportionment of which provision is above made.

"In witness whereof, the said parties hereto have affixed their hands and seals this nineteenth day of September, 1891."

It then avers that in April, 1893, the said Stang filed in said court of common pleas in said action against said railway company an amendment in which he alleges :

"That he brings this action for himself and for the benefit of the persons and corporations hereinafter named. That at the time of the happening of the grievances complained of in this action, some of the property described in said amended petition was insured for a part of its actual value by certain insurance companies hereinafter named, and the losses sustained were by the assurers and this plaintiff adjusted and settled, and this plaintiff was paid by said assurers the sum of fifty one thousand one hundred dollars as the total loss and the amount of liability of said assurers under and upon their several contracts of insurance, which amount was about one half of the actual value of the property destroyed. That after such payment of insurance, the following named insurance companies having paid the several amounts herein set forth, to-wit :

| | |
|---|---|
| The National Fire....... | $2222 23 |
| Norwich Union Fire Insurance Socitey, London England.... | 2222 22 |
| Lancashire Insurance Company England........... | 2222 22 |
| German Insurance Company, Freeport, Ill ....... | 2222 22 |
| Liverpool London and Globe Insurance Company..... | 878 14 |
| American Fire Insurance Company........ | 2222 22 |
| Connecticut Fire Insurance Company........ | 2222 22 |
| Liberty Fire Insurance Company........ | 2222 22 |
| Cooper of Dayton....... | 888 82 |
| Northern Assurance of London........ | 1333 34 |
| Concordia Insurance Company........ | 2222 22 |
| Western Assurance Toronto Canada........ | 2222 22 |
| Providence Washington Insurance Company........ | 1344 03 |
| Security Insurance Company, New Haven........ | 1334 34 |

Fire Insurance Society v. Stang.

| | | |
|---|---:|---:|
| Norwich Union Fire Insurance Society | $1000 | 00 |
| Royal Insurance Company, London | 1000 | 00 |
| New York Bowery Fire Insurance | 2222 | 22 |
| German Fire Insurance Company, Pittsburg | 2222 | 22 |
| German Fire Insurance Company, Pittsburg | 600 | 00 |
| Northwestern National Fire Insurance Company | 2500 | 00 |
| New Hamphire of Manchester, New Hampshire | 2500 | 00 |
| American Insurance Company, Newark, N. J | 2500 | 00 |
| Total | $40,322 | 21 |

agreed to and with the plaintiff, that he should and might bring an action in his own name against the defendant railway company for the benefit of himself and said contracting insurance companies, as well as such other companies as might be interested, and that in case of a recovery not exceeding the total amount of insurance so paid, each of said companies should be entitled to receive from the plaintiff and of the sum so recovered its proper and proportionate share."

It then alleges that the railway company made a motion to strike out this amendment and it was overruled; that thereupon an answer was filed by the railway company to which a reply was made, and the case regularly stood for trial. It further avers that the plaintiff had hired counsel to assist the counsel of Mr. Stang in the prosecution of the suit, and that they were in frequent consultation with the parties from time to time and were preparing the case for trial.

It further avers:

"On the eighth day of June, 1895, an entry was made in said cause in this court by the said court, and entered upon the journals thereof as follows, to-wit: 'This day came the parties, and by consent this cause is continued at the cost of the defendant.' Up to this time said Stang and his attorneys were in consultation from time to time with this plaintiff and the other insurance companies and their agents and attorneys. But plaintiff avers, that notwithstanding said continuance and after court had apparently adjourned, on the seventh day of September, 1895, at some special session of said court, the said defendant Frank Stang, and his attorneys, without any notice to this plaintiff or any of said insurance companies, their agents or attorneys, and without its or their knowledge, caused an entry to be made in said case as follows, to-wit: 'This day came the plaintiff, Frank Stang, and dismissed the above entitled action, costs paid no record to be made,' which entry was entered by said court and journalized upon the journals thereof.

"And said Frank Stang, the defendant aforesaid, in violation of his said agreement as aforesaid, and in violation of the rights of this plaintiff, entered into an arrangement with said railway company, the defendant in said action, and for a consideration to him paid by said railway company to have said dismissal occur after the cause of action against said railway company for the negligence and tort aforesaid was barred by the statute of limitations, so that this plaintiff could not maintain an action upon its subrogated rights as aforesaid against said company.

"And plaintiff further avers that said Frank Stang, the defendant herein, did in fact recover and receive from said railway company, defendant in said action, in payment for the damages and tort aforesaid, and in settlement thereof, and as the result of the action aforesaid, and upon the liability of the said railway company aforesaid, a large amount

of money, the exact amount of which plaintiff is not informed, but is informed and believes, exceeds the sum of fifteen thousand dollars, and that he in fact settled said action so by him brought for the said sum, but instead of entering said cause as settled and showing the terms thereof, or having judgment rendered for the amount so by him agreed upon and received, caused said suit to be entered as dismissed by him as aforesaid, for the purpose of defrauding this plaintiff and the other insurance companies interested out of the amount to which they were entitled under the facts herein stated."

"Wherefore it prays judgment against the defendant for $3,222. There were two policies, one of which was for $2,222 and one for $1,000, making $3,222.

It would appear that the contract referred to therein was entered into with reference to the decision, Newcomb v. Cincinnati Ins. Co., 22 O. S., 382. In that case the suit was brought by the Cincinnati insurance company against Newcomb & Co., who had recovered $11.086 and the expenses of the suit, say $5,000, in an action against certain vessel owners for causing the destruction of a vessel of Newcomb & Co. A finding of fact was made in the superior court in which the case was tried, and the case went up and was heard upon the pleadings and findings in the case. The insurance company claimed to recover a proportion of the amount that had been recovered by Newcomb & Co. from the other party, it having paid a certain amount of the insurance on the property destroyed or lost.

The Supreme Court say :

"The defendant in error found its claim on the doctrine of subrogation. This may be stated as follows : Where a loss, covered by insurance, is occasioned by a wrong-doer, the underwriter, after reimbursing it in specie, or making compensation in money, is, in a proper case, entitled to be subrogated, *quoad hoc*, to the right of the assured against the wrong-doer. This is of the highest equity for whereas the loss is, in the first instance, that of the assured, after reimbursement or compensation, it becomes the loss of the insurer.

"The plaintiffs in error insist that the doctrine, if ever recognized, has been doubted by modern decisions. We do not so think. It was fully recognized by Lord Hardwick in the early case of Randall v. Cochren, 1 Ves. Sen., 98, with which the American cases are in nearly universal accord. The loss of mortgaged premises, insured at the instance of the mortgagee, presents a case *sui generis*, for rejection of the application of the doctrine.

"There are two classes of cases for its application, first, where the total loss sustained is covered by insurance, and reimbursed or compensated by the underwriters : Second, when the loss sustained is but partially covered by insurance, and is reimbursed or compensated accordingly. These may be respectively denominated full insurance and partial insurance.

"In case of partial insurance, of which class is the one at bar, the assured and underwriter have each a substantive interest in the claim against the wrong-doer; whereas, in a case of full insurance and compensation, the interest of the former is but nominal.

"Where the assured, as in case of partial insurance, sustains a loss, in excess of the reimbursement or compensation by the underwriter, he has an undoubted right to have it satisfied by action against the wrong-doer. But if, by such action, there comes into his hands, any sum for

which, in equity and good conscience, he ought to account to the under-writer, reimbursement will, to that extent, be compelled in an action by the latter, based on his right in equity to subrogation.   But the assured will not, in the form of conscience, be required to account for more than the surplus, which may remain in his hands, after satisfying his own excess of loss in full, and his reasonable expenses incurred in its recovery ;  unless the underwriter shall, on notice and opportunity given, have contributed to, and made common cause with him, in the prosecution.

"In this case, the losses of the plaintiffs in error, in excess of insurance, exceeded $9,000; their recovery was $11,086.   The costs of prosecuting the action exceeded $6,000.   The amount applicable to their excess of loss, after payment of expenses, was insufficient to satisfy it. It is not unconscionable that they retain this :   It *would be* to award any part of it to the defendant in error, who refused to hazard the costs of its recovery."

It will be seen by the portions of the petition read that the plaintiff insurance company had entered into a contract with Stang whereby it had undertaken to sustain a portion or contribute to the cost and the expenses of this suit against the railroad company.

The counsel who opened the case on behalf of the defendant in error, admitting the general doctrine as claimed by counsel on behalf of plaintiff in error, said nevertheless that this action could not be maintained for the reason that the proper and the only remedy of the plaintiff in error was to have made application in the court of common pleas to set aside the entry of dismissal on the ground of irregularity and fraud, proceeding under sec. 5354, Rev. Stat.

Conceding that this is a proper case for a party to proceed under sec. 5354, Rev. Stat., nevertheless under the decisions of the supreme court of the state of Ohio it is not his only remedy, and for this holding of the supreme court I refer as the latest case, at least that I know of, to the case of Darst v. Phillips, 41 O. S., 514.   The syllabus of the case reads :

" The special proceeding provided by sec. 5354, Rev. Stat., authorizing courts to vacate their own judgments rendered at a previous term, for fraud practiced by the successful party, is a cumulative remedy and does not exclude or limit the right of a party by original action to impeach a judgment or enjoin its collection for such fraud."

I shall not read from the decision of the case, which fully sustains the position, but the judge in deciding the case cites Long v. Mulford, 17 O. S., 484, and Coates v. Chillicothe Bank, 23 O. S., 415.   So that the contention that the plaintiff's only remedy is the setting aside of this judgment in this case under this section is not sustained by the authorities.   But in our opinion this case is not a suit for the purpose of setting aside that judgment.   The petition nowhere claims that the judgment of dismissal should be set aside.   It proceeds upon the theory that the plaintiff has unlawfully dismissed a suit, and given a final judgment in favor of the railroad company to the injury of the plaintiff without the plaintiff's knowledge or consent and in violation, first, of his agreement in writing entered into with the insurance company, and second, of his obligations as a trustee to commence and prosecute the suit for the interest of all concerned.

It is contended by counsel who succeeded the first counsel in this case, first, that there was no consideration for that contract, and second,

that there was no trust. It was claimed and contended that Stang in settling this case had settled only his interest, his claim for damages, without any reference whatever to a claim for damages, if any, that the insurance companies might have and for which they might maintain a suit.

Counsel for plaintiff in error have cited a great many cases in regard to the rights of these parties, in regard to the doctrine of subrogation and upon the question as to in whose name the suit must be prosecuted. It is claimed the suit must in all cases be prosecuted in the name of the party who owned the building, the original owner, in this case it was Stang, to protect and obtain the rights and remedies that the plaintiff insurance companies may be entitled to. Of course, some of those cases are under the old system of practice, but there are cases which have been cited under the laws of states that have a code which is substantially like the code of the state of Ohio. One case of that kind, which is found in 8 U. S. Circuit Court of Appeals, 433, was a case in which a suit had been brought by this same insurance society against the Standard Oil Company and that was brought for the purpose of recovering from the Standard Oil Company the amount of moneys that had been paid by the insurance company to the original party who had lost the property. The suit was brought in the name of the Norwich Union Fire Insurance Society against the Standard Oil Company and the Standard Oil Company demurred to the complaint on the ground that the plaintiff could not maintain the action in its own name, and the court deciding the case said "the correctness of the ruling is the only question we find it necessary to consider." The demurrer had been sustained by the circuit court upon the circuit and in court of appeals the judgment of the circuit court was affirmed. The result of that was that the suit could not be brought in the name of the Norwich Union Fire Insurance Society but in the name of the original owner of the property, the assured, but of course, for the benefit at least to a certain extent of the insurance society. I will read from what the judge says in that case, because it states the general doctrine:

"When an insurance company pays to the assured the amount of a loss of the property insured, it is subrogated, in a corresponding amount, to the assured's right of action against any other person responsible for the loss. This right of the insurer against such other person is derived from the assured alone, and can be enforced in his right only. At common law it must be asserted in the name of the assured. In a court of equity or of admiralty, or under the modern codes of practice, it may be asserted by the insurance company in its own name, when it has paid the insured the full value of the property destroyed. St. Louis, I. M. & S. Ry. Co. v. Commercial Union Ins. Co., 139 U. S., 223, 235, 11 Sup. St., 554 and cases cited; Marine Ins. Co. v. St. Louis, I. M. & S. Ry. Co., 41 Fed., 643. But the rule seems to be well settled that, when the value of the property exceeds the insurance money paid, the suit must be brought in the name of the assured. Aetna Ins. Co. v. Hannibal & St. J. R. Co., 3 Dill., 1, Fed. Cas. No. 96; Assurance Co. v. Sainsbury, 3 Doug., 245; Insurance Co. Bosher, 39 Me., 253; Hart v. Railroad Corp., 13 Metc., (Mass.) 99; Connecticut, etc., Ins. Co. v. New York, etc., R. Co., 22 Conn., 265, 278; Insurance Co. v. Frost, 37 Ill., 333; Fland Ins. pp. 360, 481, 591; Marine Ins. Co. v. St. Louis, I. M. & S. Ry. Co., *supra*. In such an action the assured may recover the full value of the property from the wrongdoer, but as to the amount paid him by the insurance company he becomes a trustee; and the defendant will not be

permitted to plead a release of the cause of action from the assured, or to set up as a defense the insurance company's payment of its part of the loss. Hart. v. Railroad Corp., *supra*; Hall v. Railroad Co., 13 Wall.,367. In support of this rule it is commonly said that the wrongful act is single and indivisible and can give rise to but one liability. "If," says Judge Dillon in Aetna Ins. Co. v. Hannibal & St. J. R. Co., *supra*. "One insurer may sue, then, if there are a dozen, each may sue; and, if the aggregate amount of all the policies falls short of the actual loss, the owner could sue for the balance. This is not permitted, and so it was held nearly a hundred years ago, in a case whose authority has been recognized ever since, both in Great Britain and in this country."

There is a case cited here and found in 23 Am. St. Rep., 151. It, also, is to be found in 20 Oregon, 569. I refer to it because it has a full discussion of the authorities on this subject and a large number of authorities are cited. I read the syllabus of the case:

"Where the value of property insured, and destroyed through the negligence of a third person, exceeds the amount of insurance paid, the insurer, by making such payment, only acquires a joint interest with the owner to the extent of the payment in the cause of action against the wrong-doer to recover the whole loss, and in bringing such action, both the insurer and the owner must be joined as co-plaintiffs."

In the case here involved, while the insurance companies were not named as co-plaintiffs in that they were named distinctly as plaintiffs, yet under the statute of the state of Ohio the suit was prosecuted by Frank Stang as stated in his petition, for the benefit of himself and all those insurance companies, and no question was made, or if made it was overruled, that that was not the proper method.

Therefore the case stood in that position on the petition itself and the action of Mr. Stang. The question is as to the rights of Mr. Stang in this condition of affairs.

First, he says there is no consideration for this written agreement. We think that proposition cannot be sustained. We find there is adequate consideration for the agreement and the agreement is a valid and binding agreement between Stang and the insurance companies. There was about to be a payment made by the plaintiff of the amounts for which it had insured the property. There was a question as to whether the railroad company was liable for the whole of this loss, and the plaintiff company, desiring to have the benefits of any recovery that might be had against the railway company and in pursuance of the decision in Newcomb v. Cincinnati Ins. Co., *supra*, entered into an agreement whereby they agreed to contribute towards the expenses of the prosecution and wherein they were to receive a portion of the benefits of any moneys that were to be obtained from the railroad company.

Now, that of itself is clearly a sufficient consideration. There is also a claim made that there was no trust, but there are a large number of authorities, perhaps the universal body of authorities is that Mr. Stang stood in the position of a trustee in bringing this suit for the benefit of all persons who may be interested and he was charged with the duties of a trustee. In order to settle their respective rights arising out of that relation he entered into this contract. That of itself would no doubt be a sufficient consideration, for it states the rights of the parties and the insurance company proceeded to pay the amount it had agreed to pay upon the loss; so that he stands here before this court in the position of a party who has

agreed to prosecute that suit to final judgment for the benefit of himself and these insurance companies.

It is said in making this settlement that Stang only settled his own suit. That cannot be in this state of affairs if it were possible that it might be while there was no agreement made and that under the decision in Newcomb v. Cincinnati Ins. Co., *supra*, he would be suing for and recovering only his own amount, still the position could not be maintained. The suit is brought by him to recover the whole amount and under that decision he would be called upon only to pay over to the insurance companies what might remain after he himself had been compensated for his loss over and above the amount received from the insurance companies.

So he stands, then, in the relation of trustee and under those duties to these insurance companies. But under this agreement and under the decision in Newcomb v. Cincinnati Ins. Co., *supra*, he was suing for and whatever he recovered was for the joint benefit of these respective parties, so that he could not, as a matter of law, settle his own interests and leave the interests of the insurance companies to be prosecuted by them. Whatever action he takes in that matter he takes for the benefit of both parties, and in making a settlement he settles the whole suit, dismisses the action and leaves these parties without any further remedy apparently.

Without discussing the matter further, we have no question but that the petition here states a good cause of action as against Mr. Stang and that the court erred in sustaining the demurrer to that petition; and it follows the judgment of the court of common pleas will be reversed and the case will be remanded to that court for further proceedings according to law.

Defendant in error excepts.

*Doyle & Lewis*, attorneys for plaintiff in error.

*Wickham, Guerin & Colver*, attorneys for defendant in error.