[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 446 
United States Casualty Company instituted suit against Hercules Powder Company, the complaint alleging that prior to October 4, 1940, it issued a workmen's compensation policy to Thomas Iron Company (hereinafter referred to as Iron Company) by which it agreed to indemnify the Iron Company against any loss to it from liability imposed by the Workmen's Compensation Act, R.S.
34:15-1 et seq.; that the policy provided, by Clause K thereof: "The *Page 447 
company (United States Casualty Company) shall be subrogated in case of any payment under this policy to the extent of such payment, to all rights of recovery therefor vested by law in this employer (Thomas Iron Company) against persons, corporations, associations or estates;" that the Iron Company was engaged in mining operations which required the use of explosives which were detonated by fuses, attached to percussion caps which facts were made known to defendant by the Iron Company; that the Iron Company purchased a reel of fuse from defendant; that the Iron Company relied upon the skill and judgment of defendant to supply a proper fuse for such use; that at the time of the purchaseR.S. 46:30-21 was in effect which provided that "there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows: (1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose." The complaint then alleged that the fuse was carelessly and improperly made and when used by employees of the Iron Company caused a premature explosion and injured certain employees of the Iron Company; that said employees made claim under the Compensation Act; that the Iron Company notified the plaintiff of such claims and called upon it to pay such items of damage as the Iron Company was liable for; that the plaintiff paid or agreed to pay in accordance with its policy obligation $7,411.95 and demanded payment of that amount from the defendant under the cause of action of the Iron Company against the defendant to which it was subrogated.
The defendant moved to dismiss the complaint on the following grounds: (1) that the action could not be maintained "except within the limits of and in accordance with the provisions ofR.S. 34:15-40 and plaintiff's complaint is not based on said provisions;" (2) that the damages sought to be *Page 448 
recovered do not represent damage suffered by the Iron Company; (3) that the Compensation Act does not permit subrogation of the insurer to a claim of the insured employer arising excontractu; (4) that the complaint does not establish "a properly adjudicated legal obligation to pay the compensation moneys" and (5) that the damages sought to be recovered were not within the contemplation of the parties to the contract of sale and purchase of the fuse.
There is no question but that the Iron Company had a cause of action against the defendant for damages flowing from a breach of the implied warranty of fitness. R.S. 46:30-21. The Iron Company might recover such damages in that action as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract and which are the probable result of a breach thereof. Wolcott v. Mount,38 N.J.L. 496 (E. A. 1875). It would be unrealistic to assume that the defendant was not aware that a premature explosion would be liable to injure a workman of the Iron Company and equally unrealistic to assume ignorance on the part of the defendant that the Iron Company would be liable therefor under the Compensation Act. The real question is neatly put in defendant's brief. We quote therefrom: "The question * * * is not * * * whether Thomas Iron Company had a cause of action against Hercules Powder Company by reason of breach of warranty. * * * It is whether the Thomas Iron Company had a cause of action for the recovery of compensation payments as the result of an alleged breach of implied warranty under a contract of sale and whether such cause of action was acquired by plaintiff by virtue of clause `K' of the policy aforesaid."
The plaintiff argues that the asserted cause of action arises from the right of subrogation wholly apart from the compensation statute. The defendant argues that the right to the asserted cause of action must be found within the Compensation Act or that it does not exist. The doctrine of subrogation is well known in insurance law as a device whereby the insurer who pays a loss under a policy is subrogated pro tanto to such rights and remedies as the insured may have against *Page 449 
a third person who is primarily liable to him for the damage sustained. Monmouth County Fire Ins. Co. v. Hutchinson and C. A.R.R. Co., 21 N.J. Eq. 107 (Ch. 1870). The clause in the policy issued to the Iron Company subrogating the insurer to all rights of the Iron Company against the Powder Company does not arise out of any provision in the Compensation Act but is the statement of a doctrine long recognized in our jurisprudence.
When the Legislature enacted the workmen's compensation law giving an employee a remedy other than a common law action for disability from injuries sustained in an accident arising out of and in the course of the employment, the legal effect of that legislation was to impose a new ground of liablity upon the employer. Once that liability is established, the doctrine of subrogation comes into play and it does not affect the applicability of the doctrine that the liability is a creature of the Legislature rather than of the common law. The damages for which the employer was liable in the first instance but which were paid by the insurance carrier, are no less real than the damages sustained by the insured under a fire policy in the case of the destruction of a house by fire where the insurer pays the loss. In 29 Am. Jur., Insurance, § 1339, it is stated as a general rule that the principle of subrogation applies in favor of the insurer against employers' liability, so as to permit the insurer, after payment of a loss for which the employer is liable, to enforce the right of the employer against one primarily liable for the injury. Travelers' Ins. Co. v. GreatLakes Engineering Works Co., 6 Cir., 1911, 184 Fed. 426, 36L.R.A. (N.S.) 60. This rule finds support in a number of jurisdictions and the leading case is London Guarantee Accident Co. v. Strait Scale Co., 15 S.W.2d 766 (Mo.Sup. Ct. 1929); 64 A.L.R. 936, and page 942. Since the plaintiff in the instant case has brought suit to recover the precise amounts which it paid out under its workmen's compensation policy, it is the real party in interest.
The respondent argues that the case of Inter-State Telephone Telegraph Co. v. Public Service Elec. Co., *Page 450 86 N.J.L. 26 (Sup. Ct. 1914), is dispositive of this appeal in its favor. In that case Mr. Justice Swayze said that the right to compensation created by the Workmen's Compensation Act is a part of the compensation of the employee for services rendered for which the employer receives a quid pro quo and that the compensation is no more a loss to the employer than other wages paid for work done. We are unable to follow this reasoning. The scheme of the Workmen's Compensation Act is to provide the injured employee with compensation for disability, permanent or temporary, and in varying degrees and it seems patent that such payments are a loss to the employer. In light of our holding that the plaintiff by subrogation has a right of action which it may maintain against the defendant, it follows that under Rule
3:17-1 it is the real party in interest and therefore the action may be maintained in its name. See Moore Federal Practice, Vol.
2, p. 2056; Waltzinger's New Jersey Practice, pp. 502-3.
As this case will be remanded for trial, we direct attention to the holding in Martz Coach Co., Inc., v. Hudson Bus Transp.Co., 23 N.J. Misc. 342. Judge Ackerson, now Mr. Justice Ackerson, there said: "Even though the settlement of the passengers' claims by the plaintiff appears to have been voluntary in the sense that the claims were not reduced to judgments, nevertheless, that fact does not defeat the right to indemnification. Voluntary payment merely varies the degree of proof needed to establish the liability of the indemnitor by casting upon the indemnitee the burden of proving (1) that he was liable; (2) that the settlement was reasonable; and (3) that his liability was of such a character that, in spite of it, he may recover over against the defendant."
For the reasons stated, the judgment is reversed and the case remanded for trial. *Page 451